**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES MURRAY,

                                Plaintiff,

          - v -                                  Civ. No. 9:05-CV-1186
                                                    (GTS/RFT)

EVELYN WISSMAN,[1] *Doctor*; MANVILLE, *Corrections*
*Officer*; T. BROUSSEAU, *Inmate Grievance Program*
*Supervisor*; ROY A. GIRDICH, *Superintendent*; RICHARDS,
*Physician*; JOHN/JANE DOE ## 1-18,

                                Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

JAMES MURRAY
95-A-4417
Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
309 Bare Hill Road
Malone, New York 12953

HON. ANDREW M. CUOMO                  MICHAEL G. McCARTIN, ESQ.
Attorney General of the State of New York        Assistant Attorney General
*Attorney for Defendants*
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

     *Pro se* Plaintiff James Murray brings this civil rights action, pursuant to 42 U.S.C. § 1983,

asserting Defendants violated his constitutional rights during his previous incarceration at Upstate

Correctional Facility from September 2002 until February 2003.  Pending before this Court is

---

[1] Defendants note that the correct spelling of this Defendant's name is "Weissman" and the Court will refer to
her as such.  Dkt. No. 57-24, Defs.' Mem. of Law, at p. 1 n.2.

Defendants' Motion for Summary Judgment (Dkt. No. 57), brought pursuant to Federal Rule of Civil Procedure 56, to which no opposition has been proffered.  For the reasons that follow, it is recommended that Defendants' Motion be **granted** and this entire action be **dismissed**.

## I. PLAINTIFF'S FAILURE TO RESPOND

Defendants filed their Motion for Summary Judgment on January 20, 2009.  Dkt. No. 57. In accordance with this District's Local Rules of Practice, accompanying that Motion is a document entitled "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion." Dkt. No. 57-2; N.D.N.Y.L.R. 7.1(a)(3) & 56.2.  Also in accordance with the Local Rules, Plaintiff's response time was set for February 17, 2009.  On April 22, 2009, this Court reviewed the docket report and observed that Plaintiff had failed to respond to the Motion, and indeed, had not corresponded with the Court since December 29, 2008, the date he filed a Notice of Appeal of an interlocutory decision rendered by the Honorable Glenn T. Suddaby, United States District Judge. Dkt. No. 52, Not. of App.[2]  In light of his *pro se* status, this Court *sua sponte* extended Plaintiff's response time to May 22, 2009, and further advised him of the nature of summary judgment and of the consequences that could occur should he elect not to respond to the pending Motion.  Dkt. No. 58.  We specifically stated that Plaintiff's "**failure to oppose Defendants' Motion will result in this Court accepting the facts set forth by Defendants as true.**"  *Id*. at p. 3 (quoting N.D.N.Y.L.R. 7.1(a)(3)) (emphasis in original).

Thereafter, Murray submitted a letter to the Court, dated May 21, 2009, seeking a further enlargement of time for him to respond to the pending Motion.  Dkt. No. 61.  On May 28, 2009, in

---

[2] The Appeal concerned Judge Suddaby's denial of Plaintiff's request for injunctive relief.  After the filing of the Appeal, this Court denied Defendants' request for a stay of the dispositive motion filing deadline during the pendency of Plaintiff's Appeal.  Dkt. No. 56.  On May 14, 2009, the Second Circuit denied Plaintiff's Appeal as lacking an arguable basis in law or fact.  Dkt. No. 59.

consideration of his *pro se* status, this Court granted Plaintiff's request, and, noting it would be the last extension, set his response deadline to June 30, 2009. *Id*. Despite our warning that he would not receive any further extension, Murray submitted another letter, dated June 29, 2009, again seeking an extension of his time to respond. Dkt. No. 62. The Court granted Murray a "FINAL EXTENSION" until July 31, 2009, to respond. Dkt. No. 63 (emphasis in original). True to form, just days before that final extension deadline was set to expire, Murray penned another request for an extension. Dkt. No. 64. On August 6, 2009, this Court issued an Order on that request, and, after recounting the generous amount of time Plaintiff had been provided to formulate a response, totaling over five months, the Court denied such extension request. Dkt. No. 65. Thereafter, on August 13, 2009, Murray moved for an extension of time to submit a motion for reconsideration and/or notice of appeal of this Court's August 6th Order. Dkt. No. 66. On September 9, 2009, Judge Suddaby construed the request as an appeal of this Court's non-dispositive order, and upheld this Court's decision to not further delay this action. Dkt. No. 67.

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id*.; FED. R. CIV. P. 56(c). Because Plaintiff has failed to raise any question of material fact, and because we find that he has been more than adequately warned about the nature of summary judgment and the consequences of his failure to respond, the Court will accept the facts as set forth in Defendants' Rule 7.1 Statement of Facts ("Defs.' 7.1 Statement"), supplemented by Plaintiff's verified Amended Complaint (Dkt. No. 6) and Examination Before Trial ("EBT" or "Deposition") (Dkt. No. 57-15),

as true.  *See Lopez v. Reynolds*, 998 F. Supp. 252, 256 (W.D.N.Y. 1997); *see also Young v. City of Syracuse Dep't of Public Works*, 307 Fed. Appx. 512, 513-14 (2d Cir. 2009) (unpublished decision) (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) with regard to the importance of, prior to dismissal, apprising a *pro se* litigant of the "nature of summary judgment, . . . its potential consequences, [and/]or of the requirements of a response to summary judgment").

## II.  BACKGROUND

In his Amended Complaint, Murray identifies five Defendants by name whom he claims violated his constitutional rights: 1) Evelyn Weissman, Doctor; 2) Manville, Corrections Officer; 3) T. Brousseau, Inmate Grievance Program ("IGP") Supervisor; 4) Roy A. Girdich, Superintendent; and 5) Richards, Physician.  In addition to these Defendants, Murray lists eighteen (18) John/Jane Doe Defendants, whom he claims have also partaken in actions that violated his constitutional rights. Dkt. No. 6.  Early in this litigation, Plaintiff was specifically warned of his obligation to identify the John/Jane Doe Defendants if he wished to pursue his action against them.  Dkt. No. 7 at p. 1, Order, dated Jan. 1, 2006 ("Plaintiff is advised that he United States Marshals Service can only effect service of a summons and complaint on identifiable individuals.  In the event that plaintiff wishes to pursue th[ese] claims against these defendants, he shall take reasonable steps to ascertain their identities.").  Aside from prematurely asking for an enlargement of time to serve these Doe Defendants (Dkt. No. 9), Plaintiff has not endeavored to amend his pleading to identify the eighteen (18) unnamed individuals, nor has he sought Court aid/intervention in accomplishing such feat.  This is unfortunate, to say the least, since out of the fifty-five (55) paragraphs in his Amended Complaint wherein Plaintiff relays the underlying facts and constitutional violations that befell him, thirty-nine (39) paragraphs describe actions undertaken by the various John/Jane Doe Defendants, while only

sixteen (16) paragraphs address allegedly unconstitutional actions taken by Defendants Weissman, Manville, Brousseau, Girdich, and Richards.[3]    Because Plaintiff never identified the Doe Defendants, and because he was specifically warned that he must do so in order to pursue such claims, we will only address the underlying facts of his claims against the named Defendants.

The allegations in Plaintiff's Amended Complaint center around the time period he was incarcerated at Upstate Correctional Facility, namely September 17, 2002 through February 3, 2003. *See generally* Dkt. No. 6, Am. Compl.[4]   Succinctly, Plaintiff asserts that 1) Defendants Weissman and Richards denied him adequate medical care for his serious injuries; 2) Defendant Weissman, as Health Services Director, and Defendant Girdich, as Superintendent, allowed a sick call policy to continue wherein prisoners are passed over if they fail to hear the announcement over the loudspeaker; 3) Defendant Manville denied Plaintiff bedding, recreation, food, shower, and other supplies for an unspecified "significant" period of time, with Defendant Girdich's knowledge; and 4) Defendant Brousseau failed to provide a secured grievance system, also with Girdich's knowledge.

Defendants provide the following, uncontested, material facts in support of their Motion for Summary Judgment.  Dkt. No. 57-23, Defs.' 7.1 Statement.  Both Drs. Weissman and Richards were employed at Upstate during the relevant time period, with the former holding the title of "Facility Health Services Director." *Id*. at ¶¶ 1-2.  On September 18, 2002, Plaintiff was given an x-ray of

---

[3] The following paragraphs in the Amended Complaint contain allegations against the Doe Defendants: ¶¶ 6 through 6–20, 6–24 through 6–37, 6–43, 6–45 through 6–46, and 6–49 through 6–50.  The following paragraphs in the Amended Complaint contain allegations against one or more of the named Defendants: ¶¶ 6–21 through 6–23 (Weissman), 6–38 through 6–40 (Girdich and Weissman), 6–41 (Richards), 6–42 (Weissman), 6–44 (Manville), 6–47 (Girdich), 6–48 (Manville), 6–51 through 6–54 (Brousseau), and 6–55 (Girdich).

[4] At the time he filed his Complaint, Plaintiff was housed in Southport Correctional Facility, Dkt. No. 1, Compl., however, it appears he has since been transferred back to Upstate, *see* Dkt. No. 36, Mot. for Inj. (listing Upstate Correctional Facility as housing facility).

his upper and lower spine. *Id*. at ¶ 3. With regard to his cervical spine, a radiologist noted a "narrowing of C3-C4 and C4-C5 bilaterally" and recommended that an magnetic resonance imaging (MRI) be given. *Id*. As to Plaintiff's lumbar spine, the radiologist found "no abnormality demonstrated." *Id*. On October 17, 2002, Plaintiff was given an MRI of the cervical spine, which came back as normal with no evidence of cervical cord lesion, demyelination, nor impingement. *Id*. at ¶ 4.

On October 25, 2002, Plaintiff was given x-rays of his left hip, pelvis, and right wrist. *Id*. at ¶ 5. The radiologist concluded that the x/rays of Plaintiff's hip and wrist were normal, while the x-ray of his pelvis revealed mild degenerative narrowing of the right hip. *Id*. Then, on December 10, 2002, Plaintiff was given x-rays of his left wrist and both shoulders. *Id*. at ¶ 6. The radiologist concluded each x-ray was normal.[5] *Id*.

During the relevant time period, Plaintiff was also prescribed numerous medications, including 1) Neurontin, used to control partial seizures in adults with epilepsy as well as to treat certain types of nerve pain like lumbar or cervical radicular pain syndrome; Plaintiff received this medication from October 23, 2002 through January 19, 2003; 2) Cyclobenzaprine, a muscle relaxer and generic equivalent of Flexeril, used to treat muscle pain, spasms, and stiffness; Plaintiff received this medication in all or parts of September 2002 through February 2003; 3) Naproxen, a non-steroidal anti-inflammatory (NSAID) used to reduce swelling and treat pain; Plaintiff received this medication in all or parts of September 2002 through February 2003; and 4) over-the-counter Ibuprofen.

---

[5] Defendants note further testing, in the form of x-rays and computed tomography (CAT) scan, occurred in June and August 2003, respectively; however, such tests were conducted outside the time period noted in Plaintiff's Amended Complaint.

No statement of facts are provided as to Plaintiff's allegations concerning the conditions of his confinement nor complaints about the "unsecured" grievance system.[6]

## III. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are

---

[6] Nevertheless, as explained herein, we find that such claims fail as a matter of law. *See infra* Part III.C.2 & III.D.

"more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. John/Jane Doe Defendants

As stated above, Plaintiff has failed to identify the eighteen (18) John/Jane Doe Defendants. Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service

of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[7]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id*.

As stated above, aside from prematurely asking for more time to serve the Doe Defendants, Plaintiff has never sought any type of Court intervention nor aid in identifying the Does.  At his Deposition, which was completed on the final day of the discovery period, Murray asserted that Defendants' counsel's failure to respond to his discovery request prevented him from ascertaining the Doe identities.  Pl.'s Dep. at p. 23, lines 10-17.  Earlier in the EBT, upon Plaintiff's question about his discovery demands, Defendants' counsel explained that he never received any demand from Plaintiff.  *Id*. at p.14, lines 2-12.  We note that if Plaintiff sent discovery demands that went unanswered, it was his obligation to contact the Court and seek intervention into a discovery dispute.  *See generally* Dkt. No. 28, Pretrial Scheduling Order.  Because Plaintiff had adequate notice from the Court that dismissal may ensue should he fail to identify and timely serve the Doe Defendants, and because he failed to do so, we recommend **dismissal** of all claims asserted against the Doe Defendants.  Dkt. No. 7 at p. 2 ("Plaintiff is advised that if he fails to ascertain the identity of the 'John/Jane Doe' defendants . . . so as to permit the timely service of such defendants, this action will be dismissed as against said defendants."); *Cooks v. Delpiano*, 2008 WL 4186337, at *1 n.1 (N.D.N.Y. Sept. 10, 2008); *Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998).

---

[7] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

### C.  Eighth Amendment Claims

In liberally construing his Amended Complaint, we believe that Murray attempts to assert two distinct types of Eighth Amendment violations.  First, Murray asserts claims sounding in medical indifference by his allegations that Defendants Weissman and Richards denied him adequate medical care for his serious medical needs and that Weissman and Girdich allowed a sick call policy to continue wherein an inmate is denied medical attention if he fails to hear the announcement over the loudspeaker.  Am. Compl. at ¶¶ 6–21 through 6–23 & 6–38 through 6–42.  Second, he seemingly attempts to raise conditions of confinement claims by his allegations that Defendant Manville denied him proper bedding, of which Girdich was aware, and further denied him recreation time, food, showers, and supplies for an unqualified "significant period of time."  *Id*. at ¶¶ 6–44, 6–47, & 6–48.

### 1.  Medical Claims

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).  The first prong is an objective standard and considers whether the medical condition is sufficiently serious.  The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may

result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).

Plaintiff asserts that on September 18, 2002, Defendant Weissman denied him pain medication and then discharged him from the infirmary despite his inability to walk.  Am. Compl. at ¶¶ 6–21 through 6–23.  He further claims that between September 17, 2002 and February 2003, both Defendants Weissman and Richards denied him medical care for unspecified "serious physical injuries." *Id*. at ¶¶ 6–39 & 6–41.  At no point does Murray delineate the parameters of his "serious injuries," and thus we could easily dispose of his Eighth Amendment medical claims for having failed to satisfy the objective prong of the analysis.  Nor does he state the length of time for which he was denied medication.  He testified at his Deposition that he eventually received pain medication, but was unsure of how long he was deprived of such medication.  Pl.'s Dep. at p. 37,

lines 6-13 ("I don't know – I don't know how long it took but I know I was in pain for a long time, for days."). Also during his Deposition, he claimed to suffer from a herniated and bulging disk; yet the objective medical testing conducted in 2002 and 2003, *i.e.*, multiple x-rays and MRI, all showed normal results, or at best, mild impairments. *Compare* Pl.'s Dep. at p. 99, lines 13-14 *with* Dkt. No. 57-3, Evelyn Weissman, M.D., Decl., dated Jan. 14, 2009, Exs. G-I. Not one test depicted "a condition of urgency, [or] one that may produce death, degeneration, or extreme pain." *Hathaway I*, 37 F.3d at 66 (internal quotation marks and citation omitted). And, even if Plaintiff could somehow show that he had a condition of urgency, it is clear from the uncontested material facts that Plaintiff was provided more than adequate medical treatment by both Defendants Weissman and Richards consisting of various tests and prescription medication, which would easily pass constitutional muster. *See* Weissman Decl, Exs. G-I. In this regard, Plaintiff's medical indifference claim against both Defendants Weissman and Richards for their alleged failure to provide treatment fails as it also lacks the necessary subjective component. Accordingly, Plaintiff's deliberate medical indifference claims against Defendants Weissman and Richards should be **dismissed**.

Furthermore, to the extent Plaintiff attempts to assert a medical indifference claim against Superintendent Girdich, it necessarily fails because not only has he failed to allege personal involvement on Girdich's part, but also because "supervisory officials are . . . entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment." *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183-84 (N.D.N.Y. 1996) (citing cases); *see also Murray v. Pataki*, 2007 WL 956941, at * 12 (N.D.N.Y. Mar. 29, 2007) (quoting *Abdush-Shahid*). Thus, we similarly recommend **dismissal** of claims of medical indifference against Defendant Girdich in his supervisory capacity.

*-12-*

Next, we address Plaintiff's complaints regarding the sick-call policy wherein unidentified nurses are alleged to have passed by his cell during their rounds, or that the policy allows for the opportunity for them to pass by his cell, if he is not out of bed at the right time as a result of having failed to hear the announcement over the loudspeaker. Am. Compl. at ¶ 6–39. The logical extension of Plaintiff's claims is that the sick call policy enabled nurses to deny medical treatment to inmates.

As explained in Dr. Weissman's Declaration, which was submitted in support of Defendants' Motion, there is a general requirement at Upstate that inmates be ready to been seen by the sick call nurse after an announcement is made over the loud speaker.  Weissman Decl. at ¶ 15.  The sick call nurses are "required to use their best professional judgment and common sense to determine whether an inmate (1) was incapable of getting up to receive medical care, or (2) was simply choosing to sleep through the sick call nurse's rounds."  *Id*.  Dr. Weissman avows that neither she nor Defendant Girdich imposed a policy or practice requiring sick call nurses to ignore inmates who were incapable of getting up from their beds to receive medical care.

No where in his pleading nor Deposition testimony does Plaintiff assert that Dr. Weissman or Girdich personally passed over his cell or denied him medical treatment during sick call rounds. Instead, he ostensibly seeks to hold them responsible for this allegedly unconstitutional practice solely because of their supervisory positions. Am. Compl. at ¶ 6–38.  The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he or she:  (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*,

-13-

781 F.3d 319, 323-24 (2d Cir. 1986) (citations omitted).  Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).  Here, we have no allegation that either Defendant Weissman or Girdich had any direct involvement with the actions of sick call nurses during their rounds.  Nor does Plaintiff claim that Weissman and Girdich were informed of specific scenarios wherein Murray was denied treatment from a sick call nurse.  In fact, it is unclear from his convoluted testimony exactly when, if at all, he was denied medical treatment by virtue of this so-called unconstitutional policy, or if he merely claims that the potential for denying medical treatment to him and other inmates is present.[8]  Pl.'s Dep. at pp. 37-46.  Nor is there anything unconstitutional about the sick call nurse policy.  The policy simply provides the nurses with the necessary discretion to make a professional judgment and differentiate between those inmates who are unable to get up for sick call because of some infirmity and those who choose not to get up for rounds.  Nothing in the policy dictates that nurses must pass over an inmate who does not get up for sick call.  And, there is nothing in Plaintiff's medical record

---

[8] It is equally unclear as to whether Plaintiff is simply stating the policy is unconstitutional by virtue of the fact that if he does not conform with the rule by getting out of bed, then a constitutional violation has ensued.  Certain entries in Plaintiff's Ambulatory Health Record (AHR) reflect Plaintiff's failure at times to come to the cell door as required by the sick call policy, however, it also appears that despite his refusal to get up, there were occasions where he was nevertheless assessed by a nurse and provided medication.  Furthermore, it is clear that even on those days when he was denied treatment because of his failure to comply with the policy, he nevertheless received treatment either the preceding or following date. *See, e.g.,* Dkt. No. 57-11, Evelyn Weissman, M.D., Decl., Ex. H, Pl.'s AHR, at entries dated Oct. 1, 2002 (noting that though Plaintiff was sitting on bathroom floor and refused to get up to come to cell door, Tylenol was still provided), Oct. 7, 2002 (noting Plaintiff requested refills, but slept through rounds and was non-compliant with sick call procedure, nevertheless, he was seen and provided medication the following date); Nov. 21, 2002 (noting Plaintiff was at his cell door very agitated and medications refills were requested by nurse); Nov. 22, 2002 (noting that despite putting in a sick call slip complaining about "everything," Plaintiff slept through rounds); Nov. 26, 2002 (after receiving treatment on the preceding date, Plaintiff was non-compliant with sick call protocols).

*-14-*

to substantiate his claim that he was denied medical treatment for any "significant" length of time. Plaintiff's conclusory claims are simply inadequate to state a cause of action and should accordingly be **dismissed**.

### 2. Conditions of Confinement

Next we address Plaintiff's claims against Defendants Manville and Girdich regarding the conditions of his confinement. Plaintiff's allegations against these Defendants are contained in only three paragraphs:

> (6–44) Plaintiff alleges that defendant Manville . . . denied plaintiff adequate bedding for [a] significant time [during] plaintiff['s] stay at [Upstate] between Sep 17, 2002 & Feb 2003[;] that said deprivation was expounded by plaintiff[']s bulding [sic] disc in back and caused plaintiff pain physically and mental anguish.
>
> (6–47) Plaintiff alleges that Defendant Roy A. Girdich . . . knew about said eprivation of bedding in paragraph . . . (6–44) and failed to rectify matter thereby also depriving plaintiff of mattress & causing plaintiff physical pain and mental anguish.
>
> (6–48) Plaintiff alleges that Defendant Manville . . . deprived plaintiff of recreation, food, shower w/supplies at [Upstate] for a significant period of time sometime between Sept. 17, 2002 & Feb. 2003 causing plaintiff pain and mental anguish.

Dkt. No. 6, Am. Compl.

His claims are somewhat elaborated upon during his convoluted deposition testimony. There, he explained that his mattress was ripped, scratchy, and lumpy, causing an exacerbation of his purported pre-existing back injury. Pl.'s Dep. at p. 99, lines 13-20 & p. 100, lines 1-7. Upon questioning, Murray could not recall how long he had the mattress before it was replaced, though he "doubt[ed] it was less than a week." *Id*. at p. 104, lines 20-25 & p. 105, lines 8-14. He further testified that on unspecified occasions, Manville did not provide Murray with soap or shampoo or razors for his showers nor provide recreation time. *Id*. at p. 101, lines 14-25. And that he "deprived" Plaintiff of food either literally, or by spitting in his food, or by leading Plaintiff to

-15-

believe that he had spit in his food. *Id*. at pp. 106-09.[9]

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)). The Supreme Court has recognized that restrictive and even harsh conditions are "part of the penalty that criminal offenders pay for their offenses against society[;] . . . the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 346 & 349 (1981); *see also Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." (internal quotation marks and citations omitted)).

Plaintiff's conditions of confinement allegations are conclusory, at best. No where in his Complaint nor his elongated deposition testimony does he explain the nature of the denials to allow this Court some meaningful review. He has no concept of the amount of time he was allegedly deprived bedding, recreation, shower supplies, food, etc. He provides no details on the nature of the alleged denials nor the effect it had on his back condition – in fact, medical testing during the time in question revealed normal results – nor any other physical condition that resulted, *i.e.* lost weight. Indeed, Eighth Amendment claims for far worse conditions have been denied by several courts in this Circuit. *See, e.g., Trammell v. Keane*, 338 F.3d 155 (2d Cir. 2003) (finding that negligent

---

[9] During this particular discussion, Defendants' attorney pointed out that Murray never alleged in his Amended Complaint that Manville spit in his food; Murray retorted that he pled that Manville spit in his food and there are "many ways you could deprive a person of food." Pl.'s Dep. at p. 109, lines 3-10.

failure to provide an inmate with hygiene items for two weeks fails to establish an Eighth Amendment violation); *Grant v. Wright*, 2008 WL 2097154, at \*9 (W.D.N.Y. May 19, 2008) (finding overweight prisoner failed to assert Eighth Amendment claim with regard to bedding, clothing, and toilet issues); *Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (finding no Eighth Amendment claim had been asserted where plaintiff alleged he was kept in extremely cold cell without clean linens, toiletries, or clean clothing, but admitted he was able to get warm with some blankets); *Mabery v. Keane*, 1998 WL 148386, \*8 (S.D.N.Y. Mar. 30, 1998) (conclusory allegations of unsanitary conditions such as failure to provide cleaning supplies, pest extermination, and poor bathroom ventilation fail to state an Eighth Amendment claim).   Based upon the bare record before us, Plaintiff has not met the objective prong of his Eighth Amendment claim since he fails to show that the conditions were so serious and harsh as to "violate contemporary standards of decency," *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002), such that they constituted a denial of the "minimal civilized measure of life's necessities,"  *Wilson v. Seiter*, 501 U.S. at 297-99.

But, even if we were to find that Plaintiff's allegations satisfy the objective portion of the Eighth Amendment analysis, particularly fatal to Plaintiff's claims is the absence of any allegation that either Manville, or Girdich, acted with any malicious intent.   Thus, he cannot, on the record before this Court, satisfy the second, subjective prong.   For these reasons, we recommend **granting** Defendants' Motion on all of Plaintiff's Eighth Amendment conditions of confinement claims.

### D.  Inmate Grievance Program

Lastly, we address Plaintiff's claim against Defendant Brousseau regarding the Inmate Grievance Program.   Plaintiff asserts that as the Inmate Grievance Program Supervisor, Defendant Brousseau failed to provide a secure system which would prevent inmate grievances from being

thrown in the trash.  Am. Compl. at ¶¶ 6–51 through 6–54.  To the extent Plaintiff is alleging that Defendant Brousseau's failure to process his grievances constitutes a constitutional violation, that claim must be dismissed because "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison official violated [grievance] procedures do [] not give rise to a cognizable § 1983 claim."  *Shell v. Brzezniak*, 365 F. Supp. 2d 363, 370 (W.D.N.Y. 2005) (citations omitted); *see also Carroll v. Callahan,* 2007 WL 965435, at *6 (N.D.N.Y. Mar. 30, 2007).  Thus, there is no cognizable claim asserted.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the eighteen John/Jane Doe Defendants be **dismissed** from this action pursuant to Federal Rule of Civil Procedure 4(m) and N.D.N.Y.L.R. 4.1(b); and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 57) be **granted** and this entire action be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 17, 2009
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge